## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| STEVEN WEISS, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR VIOLATIONS** |
| v. | ) | **OF THE FEDERAL SECURITIES** |
| | ) | **LAWS** |
| BLUE APRON HOLDINGS, INC., | ) | |
| JENNIFER CARR-SMITH, BEVERLY K. | ) | |
| CARMICHAEL, LINDA FINDLEY, | ) | |
| BRENDA FREEMAN, ELIZABETH | ) | **JURY TRIAL DEMANDED** |
| HUEBNER, and AMIT SHAH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Steven Weiss ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1. This is a stockholder action brought by Plaintiff against Blue Apron Holdings, Inc. ("Blue Apron" or the "Company") and the members of Blue Apron's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the Board's attempt to sell Blue Apron to Wonder Group, Inc. (Wonder") (the "Proposed Transaction").

2. On September 28, 2023, Blue Apron entered into an Agreement and Plan of Merger ("Merger Agreement") with Wonder and Basil Merger Corporation ("Purchaser"). Pursuant to

the terms of the Merger Agreement, Wonder will acquire Blue Apron in exchange for $13.00 in cash per share of Blue Apron common stock, via a tender offer (the "Tender Offer"). Pursuant to the Merger Agreement, Purchaser commenced the Tender Offer on October 13, 2023.

3. On October 13, 2023, the Board authorized the filing of the materially incomplete and misleading Schedule 14D-9 Solicitation/Recommendation Statement (the "Recommendation Statement") with the SEC. Specifically, the Recommendation Statement, which recommends that Blue Apron stockholders tender their shares in the Tender Offer, contains materially incomplete and misleading information concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (iii) potential conflicts of interest faced by J.P. Morgan and Company insiders.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Blue Apron stockholders need such information in order to make a fully informed decision in connection with the Tender Offer.

5. The Tender Offer is currently scheduled to expire at one minute after 11:59 P.M., Eastern Time, on November 9, 2023. It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and Blue Apron's other shareholders to make an informed decision whether to tender their shares in the Tender Offer. Therefore, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Blue Apron common stock.

10. Defendant Blue Apron is a Delaware corporation, with its principal executive offices located at 28 Liberty Street, New York, New York 10005. Blue Apron's shares trade on the Nasdaq Global Market under the ticker symbol "APRN."

11. Defendant Jennifer Carr-Smith has been Chairperson of the Board and a director of the Company at all relevant times.

12. Defendant Beverly K. Carmichael has been a director of the Company at all relevant times.

13. Defendant Linda Findley has been President, Chief Executive Officer and a director of the Company at all relevant times.

14. Defendant Brenda Freeman has been a director of the Company at all relevant times.

15. Defendant Elizabeth Huebner has been a director of the Company at all relevant times.

16. Defendant Amit Shah has been a director of the Company at all relevant times.

17. Defendants identified in paragraphs 11-16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

18. Launched in 2012, Blue Apron offers fresh, chef-designed meals that empower home cooks to embrace their culinary curiosity, challenge their abilities in the kitchen and see what a difference cooking quality food can make in their lives. On the Company's direct-to-consumer platform, the Company offers its customers a balanced mix of ingredients, cuisines, familiarity, discovery, and preparation times. Blue Apron is focused on offering a variety of choices every week, including a range of recipes designed for a healthy lifestyle, so that customers can make selections based on their individual or household needs and preferences. On June 9, 2023, Blue Apron closed its transaction with FreshRealm, Inc. ("FreshRealm"), pursuant to which Blue Apron transferred its operational infrastructure to FreshRealm, including fulfillment centers, equipment, know-how and related personnel. Blue Apron received approximately $25 million of upfront cash, subject to certain adjustments, and is eligible to receive up to $25 million of value upon the achievement of certain milestones.

### The Proposed Transaction

19. On September 29, 2023, Blue Apron announced that it had entered into the Proposed Transaction, stating, in relevant part:

> NEW YORK--(BUSINESS WIRE)--Blue Apron (Nasdaq: APRN) (the "Company"), the pioneer of the meal kit industry in the United States, today announced that it has entered into a definitive merger agreement to be acquired by Wonder Group ("Wonder"), a company founded by entrepreneur Marc Lore that is redefining at-home dining and food delivery.
>
> Under the terms of the merger agreement, which has been unanimously approved by Blue Apron's Board of Directors, Blue Apron stockholders will be entitled to

4

receive $13.00 in cash per share of Class A common stock through a tender offer, representing an equity value of approximately $103 million.  The per share purchase price represents a 137% premium to the September 28, 2023 closing price and a 77% premium to the 30-day volume weighted average price of the Company's Class A common stock.

Wonder's acquisition of Blue Apron is expected to create a leading platform for mealtime, enhancing mealtime with choice, flexibility and convenience through two exceptional brands.  The combination is expected to enhance both companies' abilities to deliver chef-curated meals with high-quality ingredients to more customers across the country, solving for additional meal moments throughout the week.  Following the close of this transaction, Wonder plans to continue Blue Apron's current operations serving customers nationwide under the Blue Apron brand, with expected new synergies between consumer-facing apps and delivery logistics.

"By joining forces with Wonder, we continue to realize our vision of Better Living Through Better Food, and support how families and loved ones come together over food," said Blue Apron President and Chief Executive Officer, Linda Findley.  "Wonder and Blue Apron deliver high-quality, chef-curated meals, making this a great match to offer more incredible mealtime experiences.  The Blue Apron brand and products that our customers know and love will stay the same, with more opportunity for product expansion in the future.  Further, the transaction delivers immediate and certain value for Blue Apron stockholders at a significant premium over recent trading prices."

"Wonder is creating the mealtime super app, serving a broad range of occasions that feature cuisines from some of the world's best chefs and restaurants while leveraging our culinary engineering and vertically-integrated model," said Wonder Group Founder and Chief Executive Officer, Marc Lore.  "At-home meals play a key role in this vision and have been on our strategic roadmap since the beginning.  When the opportunity presented itself to unite with Blue Apron, pioneers in the meal kit industry, we knew it would accelerate our strategic position, create immediate opportunities for synergy and most importantly, enable us to further delight customers by expanding the ways you can access and experience Wonder.  We couldn't be more excited to welcome Blue Apron to the Wonder platform and look forward to working with Linda and her exceptional team."

Following Blue Apron's shift to an asset light business, as a result of the sale of its operational infrastructure and strategic partnership with FreshRealm, which will continue, the Company received a proposal from Wonder.  This proposal, along with others, were considered as part of a thorough strategic review process led by Blue Apron's Board of Directors.  Further details of the transaction and background on the transaction process will be included in the Company's Schedule 14D-9 with respect to the tender offer.

**Terms of the Agreement**

Under the terms of the merger agreement, Wonder will commence a tender offer to acquire all outstanding shares of the Company's Class A common stock for a purchase price of $13.00 per share in cash.

The transaction is expected to close in the fourth quarter of 2023, subject to customary closing conditions, including the tender of a majority of the outstanding shares of the Company's Class A common stock.  The closing of the transaction is not subject to any financing conditions or regulatory approvals, and Wonder has fully committed financing already on its balance sheet sufficient to fund the closing of the transaction.  Following the successful closing of the tender offer, Wonder will acquire any remaining shares of Blue Apron that are not tendered in the tender offer through a second-step merger at the same consideration per share paid in the tender offer.

The Company's Board of Directors unanimously recommends that Blue Apron's stockholders tender their shares in the tender offer.  FreshRealm, Inc., which beneficially owns approximately 16.5% of Blue Apron's outstanding shares of Class A common stock, has agreed to exercise its warrant as part of the transaction and then tender its shares in the tender offer in accordance with the terms of the tender and support agreement, and has waived applicable termination rights it has under the production and fulfillment agreement between FreshRealm and Blue Apron in connection with the transaction.

J.P. Morgan Securities LLC is acting as exclusive financial advisor and Wilmer Cutler Pickering Hale and Dorr LLP is acting as legal counsel to Blue Apron.  Goldman Sachs & Co. LLC is acting as exclusive financial advisor and Fenwick & West LLP is acting as legal counsel to Wonder.

**The Materially Incomplete and Misleading Recommendation Statement**

20. On October 13, 2023, the Board caused to be filed a materially incomplete and misleading Recommendation Statement with the SEC.  The Recommendation Statement, which recommends that Blue Apron stockholders tender their shares in the Tender Offer, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning, among other things: (i) the Company's financial projections; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; and (iii) potential conflicts of interest faced by J.P. Morgan and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Projections*

21.     The Recommendation Statement fails to disclose material information concerning the financial projections for the Company.

22.     For example, with respect to the Company's projections, the Recommendation Statement fails to disclose all line items underlying (i) Adjusted EBITDA; (ii) EBIT; and (iii) Unlevered Free Cash Flow.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Financial Analyses*

23.     The Recommendation Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

24.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose a quantification of: (i) the unlevered free cash of the Company at the terminal year; (ii) the terminal values for the Company; (iii) the inputs and assumptions underlying the discount rate range of 12.0% to 14.0%; and (iv) the present value of the additional tax savings from the usage of the Company's net operating losses accrued historically as of June 30, 2023, and net operating losses generated over the forecast period.

25.     With respect to J.P. Morgan's *Analyst Price Targets* analysis, the Recommendation Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

26.     The Recommendation Statement further fails to disclose a summary of any comparable companies analysis and/or selected transactions analysis performed by J.P. Morgan.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's and Company Insiders' Potential Conflicts of Interest*

27.     The Recommendation Statement fails to disclose material information concerning potential conflicts of interest faced by J.P. Morgan.

28. Specifically, the Recommendation Statement fails to disclose whether J.P. Morgan has performed any services for FreshRealm, which owns approximately 16.5% of the Company's common stock, in the two years prior to rendering its fairness opinion, and any fees received in connection with such services.

29. The Recommendation Statement also fails to disclose material information concerning Company insiders' potential conflicts of interest.

30. For example, according to the September 29, 2023, press release announcing the Proposed Transaction, Wonder's Founder and Chief Executive Officer Marc Lore is quoted as stating, "We couldn't be more excited to welcome Blue Apron to the Wonder platform and look forward to working with Linda and her exceptional team." Yet, the Recommendation Statement fails to disclose whether any of Wonder's proposals or indications of interest mentioned management retention in the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation, and the details of any retention-related discussions and negotiations that occurred between the Company's executive officers and Wonder.

31. In sum, the omission of the above-referenced information renders statements in the "Certain Company Forecasts," "Opinion of the Company's Financial Advisor," "Background of the Offer and the Merger" and "Executive Officer and Director Arrangements Following the Merger" sections of the Recommendation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other stockholders of Blue Apron will be unable to make a sufficiently informed decision in connection with the Tender Offer and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(d) of the Exchange Act and SEC Rule 14d-9 Promulgated Thereunder

32. Plaintiff repeats all previous allegations as if set forth in full.

33. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting Blue Apron stockholders to tender their shares in the Tender Offer.

34. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

35. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

36. SEC Rule 14d-9 sets forth, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

37. Item 8 of Schedule 14D-9 requires a company's directors to "[f]urnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

38. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omission renders the Recommendation Statement false and/or misleading.

39. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

40. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the other stockholders of Blue Apron, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act**

41. Plaintiff repeats all previous allegations as if set forth in full.

42. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation." 15 U.S.C. § 78n(e).

43. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement to Blue Apron stockholders in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. Specifically, the

Recommendation Statement misrepresented and/or omitted material facts concerning the financial projections for the Company, J.P. Morgan's financial analyses, and potential conflicts of interest faced by J.P. Morgan and Company insiders.

44. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer.

45. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

## COUNT III

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

46. Plaintiff repeats all previous allegations as if set forth in full.

47. The Individual Defendants acted as controlling persons of Blue Apron within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Blue Apron, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be

11

misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

50. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e), Section 14(d) and SEC Rule 14d-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Blue Apron stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Blue Apron, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in Blue Apron with them from proceeding with, consummating, or closing the Proposed Transaction, including the expiration of the Tender Offer, unless and until defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 24, 2023

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By  */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*

13